Feb.10. 2004  3:20PM   CB&T Ozark                                    No.6989  P. 3

| BORROWER'S NAME AND ADDRESS | LENDER'S NAME AND ADDRESS | |
|---|---|---|
| AA ADAMS CONSTRUCTION CO.<br>79 COUNTY RD 23<br>CLIO, AL 36017-3815 | COMMUNITY BANK AND TRUST<br>OF SOUTHEAST ALABAMA<br>901 N. BOLLWEEVIL CIRCLE<br>ENTERPRISE, AL 36330 | Loan Number __72621960 / 23__<br>Date __01/15/2004__<br>Maturity Date __04/14/2004__<br>Loan Amount $ __259188.07__<br>~~Renewal Of~~ __00158__ |
| "I" includes each borrower above, jointly and severally. | "You" means the lender, its successors and assigns. | Fed. Tax ID  72-1393831 |

For value received, I promise to pay to you, or your order, at your address listed above the **PRINCIPAL** sum of _____
**TWO HUNDRED FIFTY NINE THOUSAND ONE HUNDRED EIGHTY**
**EIGHT DOLLARS AND SEVEN CENTS**                       Dollars $ __259,188.07__

☒ **Single Advance:** I will receive all of this principal sum on __January 15, 2004__. No additional advances are contemplated under this note.
☐ **Multiple Advances:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____
_____ I will receive the amount of $_____ and future principal advances are contemplated.
 **Conditions:** The conditions for future advances are _____

☐ **Open End Credit:** You and I agree that I may borrow under this Note, prepay this Note in whole or in part, and borrow again under this Note, so long as the aggregate unpaid principal amount owed under this Note at any time does not exceed the amount of the principal sum set forth above. My right to borrow is subject to all other conditions of this Note expires on _____.
☐ **Closed End Credit:** You and I agree that I may borrow in aggregate an amount not to exceed the principal sum shown above. Amounts I repay under this Note may not be re-borrowed later. My right to borrow is subject to all other conditions and expires on _____

☒ **INTEREST:** I agree to pay interest on the outstanding principal balance from __January 15, 2004__ at the rate of __7.000000__ % per year until __April 14, 2004__.
**Variable Rate:** This rate may then change as stated below.
☐ **Index Rate:** The future rate will be __N/A__ the following index rate: __N/A__
__N/A__
__N/A__
☐ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.
☐ **Frequency and Timing:** The rate on this note may change as often as __N/A__.
 A change in the interest rate will take effect __N/A__
☐ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than __N/A__ % or less than _____ %. The rate may not change more than __N/A__ % each __N/A__.
**Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
☐ The amount of each scheduled payment will change.    ☐ The amount of the final payment will change.
☐ _____
**ACCRUAL METHOD:** Interest will be calculated on a __ACTUAL # DAYS/360 -DAY YEAR__ basis.
**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
☒ on the same fixed or variable rate basis in effect before maturity (as indicated above).
☐ at a rate equal to _____
☒ **LATE CHARGE:** I agree to pay a late charge on the portion of any payment not made within __10__ days after it is due equal to
__5% OF THE UNPAID AMOUNT, WITH A MINIMUM OF $25.00__
☒ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay _____ the following charges which ☒ are ☐ are not included in the principal amount above: __SEE THE ITEMIZATION INCORPORATED HEREIN BY REFERENCE.__
**PAYMENTS:** I agree to pay this note as follows:
☒ **Interest:** I agree to pay accrued interest __WITH PRINCIPAL DUE ON April 14, 2004__
☒ **Principal:** I agree to pay the principal __April 14, 2004__
☐ **Installments:** I agree to pay this note in _____ payments. The first payment will be in the amount of $_____ and will be due _____. A payment of $_____ will be due _____ thereafter. The final payment of the entire unpaid balance of principal and interest will be due _____.
**PURPOSE:** The purpose of this loan is __COMBINE 6 CB&T LOANS__.

**ADDITIONAL TERMS:**

UNIVERSAL NOTE AND SECURITY AGREEMENT
©1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UNS-LAZ-AL 3/5/99 Custom   MOF. EGAUNSL2                    [signature]   (page 1 of 4)

Feb.10. 2004 3:20PM    CB&T Ozark    No.6989 P. 4

## SECURITY AGREEMENT

**SECURITY INTEREST:** I grant you a security interest in all of the Property described below that I now own and that I may own in the future (including, but not limited to, all parts, accessories, repairs, improvements, and accessions to the Property), wherever the Property is or may be located, and all cash and non-cash proceeds and products from the Property, and all supporting obligations that relate to or arise out of any of the Property (including things in action) described below, all documents that now or hereafter evidence any of the Property described below or the right to receive, hold or dispose of any of that Property.

☐ **Inventory:** All inventory, whether now owned or hereafter acquired by Debtor, including all goods, other than farm products, which now or hereafter:
 (a) are leased by Debtor as lessor;
 (b) are held by Debtor for sale or lease or to be furnished under a contract of service;
 (c) are furnished by Debtor under a contract of service; or
 (d) consist of raw materials, work in process, or materials used or consumed in Debtor's business.

☒ **Equipment:** All equipment, whether now owned or hereafter acquired by Debtor, including all goods now or hereafter owned by Debtor other than inventory, farm products, and consumer goods, and including all machinery, motor vehicles, furniture, trade or business fixtures, manufacturing equipment, mobile equipment, farm machinery and equipment, shop equipment, office equipment, record-keeping equipment, parts and tools, computer and printing equipment, and all goods which are, or are to become, fixtures. All equipment described in any list or schedule which Debtor gives to Secured Party is also included in the Property, but delivery of such a list is not necessary for the attachment of Secured Party's security interest in Debtor's equipment as described above, and Secured Party's security interest is not limited to the Property described in any such list or schedule.

☐ **Farm Products:** All farm products, whether now owned or hereafter acquired by Debtor, including all goods, other than standing timber, with respect to which Debtor is engaged in raising, cultivating, propagating, fattening, grazing or any other farming, livestock, or aquacultural operation and which are:
 (a) crops grown, growing, or to be grown, including:
  (i) crops produced on trees, vines, and/or bushes; and
  (ii) aquatic goods produced in aquacultural operations;
 (b) livestock born or unborn, including aquatic goods produced in aquacultural operations;
 (c) feed, seed, fertilizer, medicines, or other supplies used or produced in Debtor's farming operation; or
 (d) products of crops or livestock in their unmanufactured states.

☒ **Accounts:** All accounts of Debtor, whether now owned or existing or hereafter acquired or arising, including all rights of Debtor to payment of a monetary obligation, whether or not earned by performance, and whether originally owed to Debtor or acquired by Debtor after the obligation came into existence:
 (a) for property that has been or is to be sold, leased, licensed, assigned, or otherwise disposed of;
 (b) for services rendered or to be rendered;
 (c) for a policy of insurance issued or to be issued;
 (d) for a secondary obligation incurred or to be incurred;
 (e) for energy provided or to be provided;
 (f) for the use or hire of a vessel under a charter or other contract;
 (g) arising out of the use of a credit or charge card or information contained on or for use with the card;
 (h) as winnings in a lottery or other game of chance operated or sponsored by a State, governmental unit of a State, or person licensed or authorized to operate the game by a State or governmental unit of a State; and
 (i) arising out of an interest in or claim under a policy or policies of insurance for healthcare goods or services provided.

☐ **Instruments (Including Promissory Notes), Documents, Chattel Paper (Including Electronic Chattel Paper), Letter-of-Credit Rights, and Other Rights to Payment:** All of Debtor's right, title and interest, whether now owned or existing or hereafter arising or acquired, in and to all instruments, documents, chattel paper, letter-of-credit rights, and other rights to payment, including:
 (a) all negotiable instruments, including promissory notes and any other writings that evidence a right to payment of a monetary obligation and are not themselves a security agreement or lease, and that are of a type that in ordinary course of business are transferred by delivery with any necessary endorsement or assignment, but not including investment property, letters of credit, or writings that evidence a right to payment arising out of the use of a credit or charge card or information contained on or for use with the card;
 (b) all documents of title and all receipts of the type described in Section 7-201(2) of the Uniform Commercial Code;
 (c) all chattel paper, including any record or records that evidence both a monetary obligation and a security interest in specific goods, a security interest in specific goods and software used in the goods, a security interest in specific goods and license of software used in the goods, a lease of specific goods, or a lease of specific goods and license of software used in the goods (but not including charters or other contracts involving the use or hire of a vessel or records that evidence a right to payment arising out of the use of a credit or charge card or information contained on or for use with the card), and including all chattel paper evidenced by a record or records consisting of information stored in an electronic medium; and
 (d) all letters of credit and letter-of-credit rights, including all rights of Debtor to payment or performance under a letter-of-credit, whether or not the beneficiary has demanded or is at the time entitled to demand payment or performance.

☒ **General Intangibles:** All general intangibles, whether now owned or hereafter acquired by Debtor, including any personal property, things in action, payment intangibles, tax refunds, applications for patents, patents, copyrights, trademarks, trade names, trade secrets, service marks, goodwill, customer lists, permits and franchises, licenses, software, the right to use Debtor's name and likeness, and all property and rights described under the heading "Government Payments and Programs" below (which description is incorporated herein by this reference), but not including accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment property, letter-of-credit rights, letters of credit, money, or oil, gas, or other minerals before extraction (as those terms are defined or used in Article 9 of the Uniform Commercial Code).

☐ **Deposit Accounts:** All deposit accounts, whether now owned or hereafter acquired by Debtor, including all demand, time, savings, passbook, or similar accounts maintained with a bank or other financial institution, but not including investment property or accounts evidenced by an instrument.

☐ **Investment Property:** All of Debtor's investment property, whether now owned or hereafter acquired, including all securities, whether certificated or uncertificated, securities entitlements, securities accounts, commodity contracts, and commodity accounts.

☐ **Commercial Tort Claims:** All rights of Debtor now existing or hereafter arising in that certain tort claim more particularly described as follows (provide description of tort claim): _____

_____

_____

☐ **Government Payments and Programs:** All payments, accounts, general intangibles, or other benefits (including, but not limited to, payments in kind, deficiency payments, letters of entitlement, warehouse receipts, storage payments, emergency assistance payments, diversion payments, and conservation reserve payments) in which Debtor now has and in the future may have any rights or interest and which arise under or as a result of any pre-existing, current or future federal or state governmental program (including, but not limited to, all programs administered by the Commodity Credit Corporation and ASCS).

☒ **Specific Property:** All of Debtor's right, title and interest, whether now owned or hereafter acquired, in the following property (all without limiting the generality of the applicable descriptions set forth above): _____
SEE THE ADDENDUM TO SECURITY AGREEMENT DATED 01/15/2004
INCORPORATED HEREIN BY REFERENCE.
_____

☐ **Standing Timber:** All of Debtor's right, title and interest, whether now owned or hereafter acquired, in standing timber located on the real property described below, and all cutting rights with respect thereto.

☐ **As-Extracted Collateral:** All of Debtor's right, title, and interest, whether now owned or hereafter acquired, in all oil, gas, and other minerals extracted from the real property described below, and all accounts arising out of the sale at the wellhead, minehead, or mine of oil, gas, or other minerals from such real property.

DAG    (page 2 of 4)

©1994, 1991 Bankers Systems, Inc., St. Cloud, MN Form UCB-LAZ-AL 3/5/98 Custom    MCF. EGAUNSLZ

Feb. 10. 2004  3:21PM   CB&T Ozark                                   No. 6989   P. 5

☐ Where the Property includes goods that are or are to become fixtures, or standing timber, or as-extracted collateral: The legal description of the real property on which such Property is or will be located is (provide legal description or other sufficient description of real property): _____

_____
_____

The record owner of the real property (if other than Debtor) is (provide name of record owner of real property, other than Debtor):

_____

If this agreement covers timber to be cut, minerals (including oil and gas), fixtures or crops growing or to be grown, the legal description is:

_____
_____

☐ If checked, file this agreement on the real estate records. Record owner (if not me) _____

The Property will be used for a  ☐ personal   ☒ business   ☐ agricultural   ☐ _____ purpose.

## ADDITIONAL TERMS OF THE SECURITY AGREEMENT

**GENERALLY** - This agreement secures this note and any other debt I have with you, now or later. However, it will not secure other debts if you fail with respect to such other debts, to make any required disclosure about this security agreement or if you fail to give any required notice of the right of rescission. If property described in this agreement is located in another state, this agreement may also, in some circumstances, be governed by the law of the state in which the Property is located. All references to "this note" or "this agreement" or "this loan" shall mean this Universal Note and Security Agreement.

**OWNERSHIP AND DUTIES TOWARD PROPERTY** - I represent that I own all of the Property, or to the extent this is a purchase money security interest I will acquire ownership of the Property with the proceeds of the loan. I will defend it against any other claim. Your claim to the Property is ahead of the claims of any other creditor. I agree to do whatever you require to protect your security interest and to keep your claim in the Property ahead of the claims of other creditors. I will not do anything to harm your position.

I will keep books, records and accounts about the Property and my business in general. I will let you examine these records at any reasonable time. I will prepare any report or accounting you request, which deals with the Property.

I will keep the Property in my possession and will keep it in good repair and use it only for the purpose(s) described on page 1 of this agreement. I will not change this specified use without your express written permission. I represent that I am the original owner of the Property and, if I am not, that I have provided you with a list of prior owners of the Property.

I will keep the Property at my address listed on page 1 of this agreement, unless we agree I may keep it at another location. If the Property is to be used in another state, I will give you a list of those states. I will not try to sell the Property unless it is inventory or I receive your written permission to do so. If I sell the Property I will have the payment made payable to the order of you and me.

I will pay all taxes and charges on the Property as they become due. You have the right of reasonable access in order to inspect the Property. I will immediately inform you of any loss or damage to the Property.

If I fail to perform any of my duties under this security agreement, or any mortgage, deed of trust, lien or other security interest, you may without notice to me perform the duties or cause them to be performed. Your right to perform for me shall not create an obligation to perform and your failure to perform will not preclude you from exercising any of your other rights under the law or this security agreement.

**PURCHASE MONEY SECURITY INTEREST** - For the sole purpose of determining the extent of a purchase money security interest arising under this security agreement: (a) payments on any nonpurchase money loan also secured by this agreement will not be deemed to apply to the Purchase Money Loan, and (b) payments on the Purchase Money Loan will be deemed to apply first to the nonpurchase money portion of the loan, if any, and then to the purchase money obligations in the order in which the items of collateral were acquired or if acquired at the same time, in the order selected by you. No security interest will be terminated by application of this formula. "Purchase Money Loan" means any loan the proceeds of which, in whole or in part, are used to acquire any collateral securing the loan and all extensions, renewals, consolidations and refinancing of such loan.

**PAYMENTS BY LENDER** - You are authorized to pay, on my behalf, charges I am or may become obligated to pay to preserve or protect the secured property (such as property insurance premiums). You may treat those payments as advances and add them to the unpaid principal under the note secured by this agreement or you may demand immediate payment of the amount advanced.

**INSURANCE** - I agree to buy insurance on the Property against the risks and for the amounts you require and to furnish you continuing proof of coverage. I will have the insurance company name you as loss payee on any such policy. You may require added security if you agree that insurance proceeds may be used to repair or replace the Property. I will buy insurance from a firm licensed to do business in the state where the property is located. The firm will be reasonably acceptable to you. The insurance will remain in force until the Property is released from this agreement. If I fail to buy or maintain the insurance (or fail to name you as loss payee) you may purchase it yourself.

**WARRANTIES AND REPRESENTATIONS** - If this agreement includes accounts, I will not settle any account for less than its full value without your written permission. I will collect all accounts until you tell me otherwise. I will keep in trust for you the proceeds from all the accounts and any goods which are returned to me or which I take back. I will not mix them with any other property of mine. I will deliver them to you at your request. If you ask me to pay you the full price on any returned items or items retaken by myself, I will do so.

If this agreement covers inventory, I will not dispose of it except in my ordinary course of business at the fair market value for the Property, or at a minimum price established between you and me.

If this agreement covers farm products I will provide you, at your request, a written list of the buyers, commission merchants or selling agents to or through whom I may sell my farm products. In addition to those parties named on this written list, I authorize you to notify at your sole discretion any additional parties regarding your security interest in my farm products. I remain subject to all applicable penalties for selling my farm products in violation of my agreement with you and the Food Security Act. In this paragraph the terms farm products, buyers, commission merchants and selling agents have the meanings given to them in the Federal Food Security Act of 1985.

**REMEDIES** - I will be in default on this security agreement if I am in default on any note this agreement secures or if I fail to keep any promise contained in the terms of this agreement. If I default, you have all of the rights and remedies provided in the note and under the Uniform Commercial Code. You may require me to make the secured property available to you at a place which is reasonably convenient. You may take possession of the secured property and sell it as provided by law. The proceeds will be applied first to your expenses and then to the debt. I agree that 10 days written notice sent to my last known address by first class mail will be reasonable notice under the Uniform Commercial Code. My current address is on page 1. I agree to inform you in writing of any change of my address. You may demand immediate payment of the debt(s) if the debtor is not a natural person and without your prior written consent; (1) a beneficial interest in the debtor is sold or transferred, or (2) there is a change in either the identity or number of members of a partnership, or (3) there is a change in ownership of more than 25 percent of the voting stock of a corporation.

**FILING** - A carbon, photographic or other reproduction of this security agreement or the financing statement covering the Property described in this agreement may be used as a financing statement where allowed by law. Where permitted by law, you may file a financing statement which does not contain my signature, covering the Property secured by this agreement.

©1994, 1991 Bankers Systems, Inc., St. Cloud, MN   Form UNI-LAZ-AL 3/5/98 Custom   MOF. EGAUN5LZ                                                    (page 3 of 4)

ADDITIONAL TERMS OF THE NOTE

**DEFINITIONS** - As used on pages 1, 2 and 3, "☒" means the terms that apply to this loan. "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW** - The laws of the United States and, to the extent not inconsistent therewith, the laws of the state of Alabama. Any term of this agreement which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement. No modification of this note or any agreement securing this note is effective unless the modification is in writing and signed by you and me. Time is of the essence in this agreement.

**PAYMENTS** - Each payment of principal and interest I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce accrued unpaid interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreement in this note. I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary).

**INTEREST** - Interest accrues on the principal remaining unpaid from time to time, until paid in full. If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal sum outstanding at that time. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to in this note (either before or after maturity). If any notice of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this agreement, you agree to refund it to me.

**INDEX RATE** - The index will serve only as a device for setting the interest rate on this note. You do not guarantee by selecting this index, or the margin, that the interest rate on this note will be the same rate you charge on any other loans or class of loans you make to me or other borrowers.

**POST MATURITY RATE** - For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means the date of the last scheduled payment indicated on page 1 of this note or the date you accelerate payment on the note, whichever is earlier.

**SINGLE ADVANCE LOANS** - If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph herein.

**MULTIPLE ADVANCE LOANS** - If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed end credit, repaying a part of the principal will not entitle me to additional credit.

**SET-OFF** - I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

"Right to receive money from you" means:
(1) any deposit account balance I have with you;
(2) any money owed to me on an item presented to you or in your possession for collection or exchange; and
(3) any repurchase agreement or other nondeposit obligation.

"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights are only as a representative. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right to set-off.

**DEFAULT** - I will be in default if any one or more of the following occur: (1) I fail to make a payment on time or in the amount due; (2) I fail to keep the Property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you; (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe you will have difficulty collecting the amount I owe you; (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority; (9) I change my name or assume an additional name without first notifying you before making such a change; (10) I fail to plant, cultivate and harvest crops in due season; (11) any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

**REMEDIES** - If I am in default on this note you have, but are not limited to, the following remedies:
(1) You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued unpaid charges).
(2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "SET-OFF" paragraph herein.
(3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.
(4) You may refuse to make advances to me or allow purchases on credit by me.
(5) You may use any remedy you have under state or federal law.
(6) You may make use of any remedy given to you in any agreement securing this note.

By selecting any one or more of these remedies you do not give up your right to use later any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to consider later the event a default if it continues or happens again.

**COLLECTION COSTS AND ATTORNEY'S FEES** - I agree to pay you all reasonable costs you incur to collect this debt or realize on any security. This includes, if the amount financed is more than $300.00, your reasonable attorneys' fees of up to 15% of the unpaid debt if you refer collection of this note to an attorney who is not your salaried employee. This provision also shall apply if I file a petition or any other claim for relief under any bankruptcy rule or law of the United States, or if such petition or other claim for relief is filed against me by another.

**WAIVER** - I give up my rights to require you to do certain things. I will not require you to:
(1) demand payment of amounts due (presentment);
(2) obtain official certification of nonpayment (protest); or
(3) give notice that amounts due have not been paid (notice of dishonor).

I waive any defenses I have based on suretyship or impairment of collateral. To the extent permitted by law, I also waive all personal property exemptions in the property securing this loan.

**OBLIGATIONS INDEPENDENT** - I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may without notice release any party to this agreement without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note. I will not assign my obligation under this agreement without your prior written approval.

**CREDIT INFORMATION** - I agree and authorize you to obtain credit information about me from time to time (for example, by requesting a credit report) and to report to others your credit experience with me (such as a credit reporting agency). I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

---

**SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGES 1, 2, AND 3).** I have received a copy on today's date.
**CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

AA ADAMS CONSTRUCTION CO.
BY: _____
BEN T. ADAMS   PARTNER

DISPOSITION OF FUNDS

Deposited to Account Number _____   Check Number _____

SIGNATURE FOR LENDER

©1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UNB-LAZ-AL 2/22/95 Custom  MDP. EQAUNBLZ                  (page 4 of 4)

## ADDENDUM TO SECURITY AGREEMENT DATED
## 01/15/2004

| DEBTOR'S NAME AND ADDRESS | SECURED PARTY'S NAME AND ADDRESS |
|---|---|
| AA Adams Construction Co.<br>79 County Road 13<br>Clio, AL 36017 | Community Bank and Trust of Southeast Alabama<br>901 N. Boll Weevil Circle<br>Enterprise, AL 36330 |

The date of this Addendum to Security Agreement is January 15, 2004. For value received the Debtor hereby agrees to all of the terms and conditions of the Security Agreement referenced above and, if applicable, grants the Secured Party a security interest in the following additional collateral:

Assignment of contract dated 02/28/2003 between Designer Acoustics Inc., and AA Adams Construction Co., in the amount of $ 122,000.00 as evidenced by UCC1 filed with Alabama Secretary of State on 04/02/2003 bearing file #B 03 0271479 FS;

Assignment of contract between Bates Engineers/Contractors Inc., and AA Adams Construction Co., in the amount of $ 44,800.00 dated 04/09/2003 as evidenced by UCC1 filed with Alabama Secretary of State on 07/11/2003 bearing file # B 03-0583466B;

Assignment of contract dated 07/17/2003 between AA Adams Construction Co., and Designer Acoustics, Inc., in the amount of $ 360,000.00 as evidenced by UCC1 filed with Alabama Secretary of State on 09/11/2003 bearing file # B 03 0789549 FS;

Assignment of contract Dated 07/28/2003 between Speegle Construction, Inc., and AA Adams Construction Co., in the amount of $ 987,920.00 as evidenced by UCC1 Filed with Alabama Secretary of State on 11/13/2003 bearing file # B03 0995578FS;

Assignment of 2 contracts dated 10/27/2003 by and between Jimenez and Associates, Inc., to AA Adams Construction Co., in the amounts of $ 34,835.00 and $ 26,415.00 as evidenced by UCC1 filed 12/31/2003 bearing file # B 04-000160 FS;

Assignment of contracts # 33-9500, 33-2000, 33-9200, 33-6000, 33-2100, all dated October 27, 2003 between AA Adams Construction Company and Jimenez and Associates, Inc., in the amount of $ 249, 800.50.

By signing below, Debtor agrees to all of the terms and conditions of the Security Agreement referenced above and, if applicable, that this document describes additional collateral which is subject to all terms and conditions of the Security Agreement referenced above.

Debtor
AA Adams Construction Co.

BY:_____
Ben T. Adams, Partner