# IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA
## CLAYTON DIVISION

BEN T. ADAMS, d/b/a AA-ADAMS )
CONSTRUCTION COMPANY )
)
　　Plaintiff, )
)
-vs- ) CV-2003-024
)
CHARTER CONSTRUCTION )
MANAGEMENT CO., INC.; et al. )
)
　　Defendants. )

**ORDER**

*FILED FEB 2 3 2004 — DAVID S. NIX, CLERK, BARBOUR COUNTY, ALABAMA*

　　This matter is before this Court following a non-jury trial. One of the Defendants, Sutton Construction Company, has previously been dismissed without prejudice. At the trial, which took place on February 2nd, both the Plaintiff, Ben T. Adams d/b/a AA-Adams Construction Company (Adams), and the remaining Defendant, Charter Construction Management Company, Inc., were present and represented by Counsel. Both parties had an opportunity to call witnesses and admit documentary evidence. Based upon the evidence adduced at trial, this Court finds as follows:

　　Charter Construction Management Company, Inc. (Charter) was the general contractor on the construction of the Sun Ridge Apartments located in or near LaGrange, Georgia. One of its subcontractors on that job was the previously dismissed Defendant, Sutton Construction Company (Sutton). The Plaintiff in this case was requested by Sutton and did supply labor and materials to the Sun Ridge job.

　　Charter was aware that Adams was supplying labor and materials to this job. It was the custom and practice of Charter to require its subcontractors to list all suppliers to

its job and the amount of the current balance owed to those suppliers. These suppliers'/subcontractors' lists were prepared periodically by Sutton and sent to Charter. These lists showed AA-Adams Construction as one of those suppliers. In addition, as a condition for periodic payments or advances, Charter routinely required each of those suppliers to execute a Waiver and Subordination of Lien. Early on in the project, Adams did execute one or more of these so-called lien waivers.

During the work on this project, because of financial difficulties, Sutton's credit became impaired. Rather than risk having one of its subcontractors go out of business, thus slowing down work on the project, Sutton, Charter, and Sutton's financing entity, Community Bank and Trust, entered into an agreement and arrangement whereby Sutton assigned its rights under its contract with Charter to the Bank. Thereafter, payments under that contract were presumably made by Charter to the Bank and the Bank in turn would pay Sutton.

By August 2001 Adams had built up a large account balance on the Sun Ridge job in the amount of $98,915.04. Adams communicated to Charter that he would have no choice but to cease work on the project unless he could get assurances from Charter that he would be paid. Again, rather than risk a walkout by a supplier, and a slow down of work on the project, Charter and Adams worked out an agreement. Under the terms of this agreement, Adams agreed to accept a partial payment in the amount of $4,500.00 and Charter agreed to be directly responsible to Adams for paying the remaining balance of $94,415.04. This Court finds that this agreement was an "original" agreement in which the effect of Charter's promise was to pay the obligation of Sutton, but the object of that promise was to promote the interest and purpose of Charter in not having the work slow

)                              )                                        /56C

down on the project. Adams confirmed that agreement in writing by a letter dated 8-16-01. In keeping with his obligation under that agreement, Adams executed a lien waiver and was issued a check in the amount of $4,500.00.

Work continued on the project and presumably it was completed. It was undisputed at the trial that neither Sutton nor Charter ever paid Adams any additional sums of money, even though Adams continued to be shown on the supplier's/ subcontractor's list as a supplier with an account balance of $94,415.04.

After not receiving payment Adams began to inquire directly of Charter concerning the payment of his money. Throughout the spring and summer of 2002 he attempted to call Charter's office and did speak to Charter's representative on at least one occasion. Adams was told that Charter would look into it. Finally, in September 2002 Adams wrote to Charter inquiring about the payment and the possible execution of a lien waiver to document any payment in that amount. Charter's representative wrote back to Adams saying that she would research the information and get back in touch with Adams. Nobody at Charter ever contacted Adams again.

Based upon the foregoing facts, this Court is of the opinion that Adams is entitled to recover from Charter under the terms of its August 2001 agreement. That agreement was in writing by virtue of Adams' August 16, 2001 letter to Charter. The Court finds that under the terms of that agreement, Charter became directly responsible for paying Adams his account balance. Moreover, the Court specifically finds, as stated above, that the object of Charter's agreement was to promote its own interest in getting the Sun Ridge job finished in an expeditious manner, even though the effect of the promise might have

)                    )                    /57C

been to discharge an obligation that Sutton had to Adams. See Fendly v. Dozier Hardware Company, Inc., 449 So. 2d 1236 (Ala. 1984).

Accordingly, it is the judgment and order of this Court that Adams is entitled to recover the sum of $94,415.04 from Charter and judgment is hereby rendered in favor of Ben Adams, d/b/a AA-Adams Construction Company and against Charter Construction Management Co., Inc. in that amount.

Thus Done and Ordered this __23rd__ day of __February__, 2004.

_____
Circuit Court Judge

I certify this to be a true and correct copy of the original which is on file and enrolled in my office in Clayton or Eufaula, Barbour County, Alabama

Witness my hand and seal 15th day of August 2005

_____
David S. Nix, Clerk